**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3732-18T1

JAMES TROUT,

     Plaintiff-Respondent,

v.

WINNER FORD,

     Defendant-Appellant.

_____

Argued November 14, 2019 – Decided December 3, 2019

Before Judges Gooden Brown and Mawla.

On appeal from the Superior Court of New Jersey, Law Division, Camden County, Docket No. L-4712-17.

John Scott Fetten argued the cause for appellant (Montgomery Fetten, attorneys; John Scott Fetten, of counsel and on the briefs; Courtney Ann Reed Keren, on the briefs).

Leo Bernard Dubler, III, argued the cause for respondent (Law Offices of Leo B. Dubler, III, attorneys; Leo B. Dubler, III, and Mark R. Natale, on the brief).

PER CURIAM

Defendant Winner Ford appeals from a March 29, 2019 order denying its motion to compel arbitration of claims raised in plaintiff James Trout's complaint. We affirm.

This matter was previously before us. We recounted the background as follows:

> In December 2015, plaintiff traded in his used car to defendant. The vehicle had an outstanding loan, which had to be satisfied at the trade-in. Plaintiff executed two agreements, namely, a trade-in agreement and a separate lease agreement for his new vehicle. The trade-in agreement has not been provided to us as a part of the record.
>
> Plaintiff paid a seventy-five dollar fee, which was added to the loan payoff and not the future purchase or lease. Plaintiff claimed the fee was never disclosed or itemized and that defendant offered various explanations for its purpose, namely, to satisfy the per diem interest on the outstanding loan; "to allow time to receive credit approval, process the vehicle transaction, and make the payoff;" to cover title transfer costs, the cost of a bank check for the payoff amount, and the time and gas mileage of clerical staff to secure the bank draft; and the cost of express mail delivery of the pay-off amount to the bank. Plaintiff claimed he never received an explanation for the fee and only learned about it after the trade-in.
>
> Plaintiff filed a Law Division complaint on behalf of himself and a purported class asserting four counts for violation of the [Consumer Fraud Act], one count of common law fraud, and one count for violation

of the [Truth in Consumer Contract, Warranty and Notice Act.]

[Trout v. Ford, No. A-3529-17 (App. Div. 2018) (slip op. at 1-2)].

The first motion judge granted defendant's motion to compel arbitration based on a provision contained in the lease agreement between the parties. Id. at 4. The lease arbitration provision stated:

> READ THIS ARBITRATION PROVISION CAREFULLY AND IN ITS ENTIREY ARBITRATION
>
> Arbitration is a method of resolving any claim, dispute, or controversy (collectively, a "Claim") without filing a lawsuit in court. Either you or Lessor/Finance Company/Holder ("us" or "we") (each, a "Party") may choose at any time, including after a lawsuit is filed, to have any Claim related to this contract decided by arbitration. Neither party waives the right to arbitrate by first filing suit in a court of law. Claims include but are not limited to the following: 1) Claims in contract, tort, regulatory or otherwise; 2) Claims regarding the interpretation, scope, or validity, of this provision, or arbitrability of any issue except for class certification; 3) Claims between you and us, our employees, agents, successors, assigns, subsidiaries, or affiliates; 4) Claims arising out of or relating to your application for credit, this contract, or any resulting transaction or relationship, including that with the dealer, or any such relationship with third parties who do not sign this contract.
>
> RIGHTS YOU AND WE AGREE TO GIVE UP

3

If either you or we choose to arbitrate a Claim, then you and we agree to waive the following rights:
• RIGHT TO A TRIAL, WHETHER BY A JUDGE OR A JURY
• RIGHT TO PARTICIPATE AS A CLASS REPRESENTATIVE OR A CLASS MEMBER IN ANY CLASS CLAIM YOU MAY HAVE AGAINST US WHETHER IN COURT OR IN ARBITRATION
• BROAD RIGHTS TO DISCOVERY AS ARE AVAILABLE IN A LAWSUIT
• RIGHT TO APPEAL THE DECISION OF AN ARBITRATOR
• OTHER RIGHTS THAT ARE AVAILABLE IN A LAWSUIT

RIGHTS YOU AND WE DO NOT GIVE UP: . . .5) Right to seek remedies in small claims court for disputes or claims within that court's jurisdiction

. . . .

. . . If a waiver of class action rights is deemed or found to be unenforceable for any reason in a case in which class action allegations have been made, the remainder of this arbitration provision shall be unenforceable. The validity and scope of the waiver of class action rights shall be decided by the court and not by the arbitrator.

[Id. at 2-4.]

We reversed the order because the lease agreement's arbitration provision was vague and unenforceable. Id. at 9.

Following our decision, defendant filed a second motion to compel arbitration based on a provision contained in a motor vehicle retail order (MVRO), which stated:

> AGREEMENT TO ARBITRATE ANY CLAIMS. READ THE FOLLOWING ARBITRATION PROVISION CAREFULLY, IT LIMITS YOUR RIGHTS, INCLUDING YOUR RIGHT TO MAINTAIN A COURT ACTION.
>
> The parties to this agreement agree to arbitrate any claim, dispute, or controversy, including all statutory claims and any state or federal claims, that may arise out of or relating to the sale or lease identified in this [MVRO] and the financing thereof. By agreeing to arbitration, the parties understand and agree that they are waiving their rights to maintain other available resolution processes, such as a court action or administrative proceeding, to settle their disputes. New Jersey Consumer Fraud Act, Used Car Lemon Law, and Truth–in–Lending claims are just three examples of the various types of claims subject to arbitration under this agreement. The parties also agree to waive any right to pursue any such claims including statutory, state or federal claims, as a class action. There are no limitations on the types of claims that must be arbitrated, except for New Car Lemon Law and Magnuson-Moss Warranty Act Claims, which are excluded from arbitration under this agreement. The arbitration shall be conducted in accordance with the Rules of the American Arbitration Association before a single arbitrator. The Costs included in the arbitration process shall be shared as provided by the Association's Rules. The arbitration shall take place in New Jersey at the address of the dealership listed on the Retail Order Form. The decision of the arbitrator shall be binding upon the parties. Any further relief sought by

5

either party will be subject to the decision of the arbitrator. This arbitration provision limits your right including to maintain a court action and have a jury trial. Please read it carefully, prior to signing.

A different motion judge denied defendant's motion with prejudice, finding the arbitration provisions under the lease agreement and the MVRO contained "separate and distinct arbitration agreements," and under Rockel v. Cherry Hill Dodge, 368 N.J. Super. 577, 581 (App. Div. 2004), conflicted with one another and were therefore unenforceable. The judge also found defendant waived its right to pursue arbitration under the MVRO because it did not rely upon the document when filing its first motion even though both the lease and the MVRO were executed at the same time.

## I.

The validity of an arbitration agreement is a question of law; therefore, we review the order denying the request to compel arbitration de novo. Barr v. Bishop Rosen & Co., Inc., 442 N.J. Super. 599, 605 (App. Div. 2015) (citing Hirsch v. Amper Fin. Servs., LLC, 215 N.J. 174, 186 (2013)). "The issue of whether a party waived its arbitration right is a legal determination subject to de novo review[,]" however, "the factual findings underlying the waiver are entitled to deference and are subject to review for clear error." Cole v. Jersey City Med., 215 N.J. 265, 275 (2013) (citations omitted).

6

Although defendant did not raise the MVRO arbitration provision until after we reversed the first motion judge, it claims it did not waive its right to enforce the MVRO arbitration provision because it consistently sought to compel arbitration. It contends waiver does not apply because proceeding to arbitration does not prejudice plaintiff. Defendant argues Rockel is distinguishable because the MVRO and lease agreement's respective arbitration provisions are not in conflict. It also argues plaintiff is not an "innocent" and "unaware" consumer as was the case in Rockel because he was a dealership employee, who drafted his own contracts. Defendant asserts public policy requires enforcement of the MVRO arbitration provision and its class action waiver. It claims, as a stand-alone document, the terms of the MVRO are "undeniably enforceable" and could be raised separately from the lease arbitration provision.

A.

"Waiver is the voluntary and intentional relinquishment of a known right." Knorr v. Smeal, 178 N.J. 169, 177 (2003). See also Cole, 215 N.J. at 276. "Waiver is never presumed[,]" but can be "overcome by clear and convincing evidence that the party asserting it chose to seek relief in a different forum." Cole, 215 N.J. at 276 (quoting Spaeth v. Srinivasan, 403 N.J. Super. 508, 514

7                                                                    A-3732-18T1

(App. Div. 2008)). "[W]aiver can occur implicitly if 'the circumstances clearly show that the party knew of the right and then abandoned it, either by design or indifference.'" Id. at 277 (quoting Knorr, 178 N.J. at 177). "Such a waiver must be done 'clearly, unequivocally, and decisively.'" Ibid.

Our Supreme Court stated courts must focus on the totality of the circumstances and apply a fact-sensitive analysis to determine if a party reserved its right to arbitrate the dispute or waived that right. Id. at 280. The factors a court must consider are: (1) the delay in making the arbitration request; (2) the filing of any motions, particularly dispositive motions, and their outcomes; (3) whether the delay in seeking arbitration was part of the party's litigation strategy; (4) the extent of discovery conducted; (5) whether the party raised the arbitration issue in its pleadings, particularly as an affirmative defense, or provided other notification of its intent to seek arbitration; (6) the proximity of the date on which the party sought arbitration to the date of trial; and (7) the resulting prejudice suffered by the other party, if any. Id. at 280-81. "No one factor is dispositive." Id. at 281.

Pursuant to Cole, defendant waived its right to assert the MVRO's arbitration provision. Although defendant raised the issue of arbitration generally in its answer, it failed to invoke the MVRO arbitration provision and

proceeded only on the lease arbitration provision. Also, defendant's initial motion to compel arbitration did not mention the MVRO's provision. Defendant waited over a year to assert the MVRO arbitration provision.

Therefore, our reversal of the initial order compelling arbitration was dispositive of defendant's ability to later raise arbitration under the MVRO. Defendant's failure to proffer all relevant documentation, despite its awareness of the MVRO arbitration provision from the onset, is the sort of piece meal litigation strategy prohibited under <u>Cole</u>.

Furthermore, "[a]n arbitration agreement is a contract, . . . and is subject, in general, to the legal rules governing the construction of contracts." <u>McKeeby v. Arthur</u>, 7 N.J. 174, 181 (1951) (citation omitted). Therefore, the completion of factual discovery had little import on the motion judge's ability to adjudicate the dispute over the arbitration contract provision.

Additionally, defendant's after-the-fact assertion of arbitration under the MVRO clearly prejudiced plaintiff. Plaintiff has endured multiple rounds of motion and appellate litigation for nearly two years, which have only decided the proper forum for adjudication of his claims. The <u>Cole</u> factors preponderate in favor of plaintiff. For these reasons, we decline to disturb the motion judge's findings on the waiver.

A-3732-18T1

B.

We also agree with the motion judge the conflicting arbitration provisions in the lease agreement and the MVRO rendered each unenforceable under Rockel.  In Rockel, a case involving plaintiffs who sued an auto dealer for unconscionable sales practices, we held arbitration could not be compelled where "the presence of two unrelated arbitration clauses contained in the contract documents, as well as their conflicting terms[,]" created ambiguity. Rockel, 368 N.J. Super. at 581.  We stated, "the arbitration agreement is highly ambiguous because the parties executed two documents which contain separate and somewhat disparate arbitration clauses.  This ambiguity, we conclude, is fatal to the compelling of the arbitration of plaintiffs' CFA claims."  Ibid.

Here, the two arbitration provisions substantively differ from one another. The lease agreement, which we already declared ambiguous, addresses plaintiff's statutory claims whereas the MVRO subjects plaintiff's statutory claims, in general and under specific statutes, to arbitration; the lease agreement uses passive language regarding the ability to pursue claims in court, whereas the MVRO contains an express waiver of such claims; the lease agreement venues the arbitration in the American Arbitration Association (AAA) or "any other organization which is approved," and the MVRO limits arbitration to the

10

AAA; the lease agreement states small claims cases are not arbitrable, whereas the MVRO covers all claims; and the lease agreement states "the validity and scope of waiver of class action rights shall be decided by the court and not by the arbitrator," whereas the MVRO contains no such provision. The conflicting provisions render the parameters of arbitration ambiguous. A reasonable consumer reading each document, which were two parts of the one transaction, would have no clear understanding of which provision applied.

Finally, we reject defendant's assertion Rockel does not apply to plaintiff because he was its learned employee. Defendant raised the issue of plaintiff's employment during the motion hearing, at which point the judge asked plaintiff to respond. Plaintiff stated this issue was previously addressed at a case management conference where the parties determined it related to class certification. The motion judge agreed stating, "it's an issue on commonality." Defendant did not respond to the judge's statement.

Arbitration agreements are interpreted under the objective, "average consumer" standard. Atalese v. U.S. Legal Servs. Grp., L.P., 219 N.J. 430, 446 (2014); see also Morgan v. Sanford Brown Inst., 225 N.J. 289, 308 (2016). Therefore, plaintiff's employment was irrelevant to the issue of arbitration, especially considering defendant's counsel did not respond to the judge's finding

or explain how plaintiff's employment status overcame the ambiguity of the arbitration provisions and required arbitration.

The remainder of defendant's arguments are without sufficient merit to warrant discussion in a written opinion.  R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION