733 F.2d 248
 116 L.R.R.M. (BNA) 2237, 101 Lab.Cas. P 11,000
 In the Matter of the Arbitration Between Gerald CORALLO, as
President of Local 239, International Brotherhood
of Teamsters, Petitioner-Appellant,
v.
MERRICK CENTRAL CARBURETOR, INC., Respondent-Appellee.
 Cal. No. 452, Docket 83-7694.
 United States Court of Appeals,
Second Circuit.
 Argued Dec. 5, 1983.
Decided April 26, 1984.
 
 Richard M. Greenspan, New York City (Charles R. Katz, New York City, on brief), for petitioner-appellant.
 Jonathan P. Arfa, New York City (Bernstein & Arfa and Stephen G. Eisenberg, New York City, of counsel), for respondent-appellee.
 Before TIMBERS, VAN GRAAFEILAND and NEWMAN, Circuit Judges.
 VAN GRAAFEILAND, Circuit Judge:
 
 
 1
 Appellant, Local 239 of the International Brotherhood of Teamsters, brought this action in Supreme Court, New York County, to confirm an arbitration award against appellee, Merrick Central Carburetor, Inc. Merrick removed the case to the United States District Court for the Southern District of New York. Both parties then moved for summary judgment. The court (Werker, J.), in a Memorandum Decision and Order dated July 20, 1983, granted Merrick's motion and vacated the award. Judgment was entered on July 22, 1983, and this appeal followed. We vacate the judgment and remand for further proceedings.
 
 
 2
 In 1956, appellee, a Nassau County carburetor manufacturer, joined the Automotive Parts Distributors Association, Inc. (APDA), a multi-employer association. APDA engaged in collective bargaining on behalf of its members with Local 239. In its membership application, Merrick authorized APDA to negotiate an agreement "with the labor organization representing its employees" and agreed "to be bound by the terms of such collective bargaining agreement until the expiration date thereof." Until 1975, Merrick considered itself a party to the collective bargaining agreements between APDA and the union. It asserts, however, that, in 1975, it laid off its employees and informed the union that it was terminating its obligations under the collective bargaining agreement. The union denies receipt of such notice.
 
 
 3
 Merrick continued to be a dues-paying member of APDA after 1975 and appeared on the Association's membership list for the years 1977 and 1979. APDA gave these lists to the union for the purpose of identifying the employers for whom APDA allegedly was authorized to bargain. Furthermore, despite Merrick's asserted break in relations with the union, when Merrick rehired a former employee and union member on a part-time basis in 1976, the employee, A.J. Buchanan, executed a new union card, and Merrick remitted union dues to Local 239 from the date of Buchanan's rehire until the present dispute arose in June 1982. After Buchanan was rehired, Merrick received monthly billing statements from the union showing what initiation, pension, welfare, and dues payments Merrick owed. These statements requested that the employer list all new and terminated employees. However, Merrick did not inform the union of any changes in the number or status of its employees until May 1981, when it informed the union by letter that one Louis Kaplowitz had retired.
 
 
 4
 In 1982, Merrick inquired whether Buchanan was eligible for benefits from the union's Welfare Fund. According to the union, it discovered at that time that Buchanan was a full-time employee and that Merrick had hired eight additional employees since November 1980. Upon learning of these facts, the union demanded that Merrick make such initiation, welfare, pension, and dues payments as would bring Merrick into compliance with the then-existing bargaining agreement between APDA and Local 239. The agreement covered the period from 1980 to 1984 and was a renewal of the 1977 bargaining agreement between APDA and the union.
 
 
 5
 Merrick refused to make the demanded payments on the ground that it was not a party to the 1980 agreement. The union rejected Merrick's contention and initiated an arbitration proceeding, as provided for in the agreement, to enforce what it considered to be Merrick's obligations. An arbitration hearing was held on June 18, 1982 and resulted in an award of $23,987.36 in favor of the union. Merrick appeared specially for the sole purpose of contesting the arbitrator's jurisdiction and did not participate in the hearing.[1] The arbitrator was not required to disclose the basis upon which his award was made, see Kurt Orban Co. v. Angeles Metal Systems, 573 F.2d 739, 740 (2d Cir.1978), and did not do so. However, Merrick concedes the arbitrator's ruling to be that "Merrick was a party to and bound by the provisions of the APDA collective bargaining agreement."
 
 
 6
 On July 1, 1982, the union initiated the State court action seeking confirmation of the award. On July 2, Merrick commenced section 9(c) proceedings before the NLRB to challenge the union's representation of Merrick's employees. See 29 U.S.C. Sec. 159(c). During the pendency of these proceedings, Merrick removed the confirmation action to the United States District Court for the Southern District of New York pursuant to section 301 of the National Labor Management Relations Act, 29 U.S.C. Sec. 185 and 28 U.S.C. Sec. 1441(b). Before the district court decided the confirmation action, the NLRB issued its decision.
 
 
 7
 In opposing Merrick's section 9(c) petition, the union asserted that the 1980-84 bargaining agreement between it and APDA constituted a contract bar to any election proceedings. After a hearing on the issue, the NLRB regional director found that Merrick had informed the union in 1975 that it was terminating the then-existing agreement between it and the union and that subsequently Merrick had not complied with any of the provisions in the APDA-union agreements concerning wages, holidays, sick leave, hiring, discharge, or pension and welfare plans. The director found that Merrick had instituted its own terms and conditions of employment and that, since 1975, no union stewards had been appointed, no grievances filed, no union bulletin board provided and no union emblem displayed. The director determined that Merrick had maintained its membership in APDA only to continue the coverage of Merrick's former owner under an APDA medical plan, and that, after 1975, Merrick had no knowledge of nor involvement in any negotiations for new collective bargaining agreements, had received no correspondence concerning these agreements, and had never received any copies of the agreements from either the union or APDA. Finally, the director found that, although the union's business representative had visited Merrick's premises on four or five occasions between 1975 and 1982, the union had made no attempt to enforce the APDA-union agreement until its representative went to Merrick's in April 1982 in response to an employee's claim for union benefits.
 
 
 8
 On the basis of the above-described findings, the director concluded "that the contractual arrangement between the Union and the APDA does not impart sufficient stability to the bargaining relationship to warrant my withholding a present determination of representation" and directed that an election be held. The director's decision contained no reference to the prior arbitration award. The union's request for Board review was denied. An election was held on October 1, 1982, and the employees rejected the union as their representative.
 
 
 9
 The district judge gave three reasons for granting Merrick's summary judgment motion and vacating the arbitration award. The first was that the NLRB determination was res judicata. The second was that the NLRB's finding of "no binding contract" between Merrick and the union overrode the arbitrator's decision that Merrick was bound by the agreement. The third was that it was not within the province of the arbitrator to determine whether the parties were bound by the arbitration agreement. None of these reasons supports the district court's grant of summary judgment in Merrick's favor.
 
 
 10
 As a general rule, unless and until an arbitration award is invalidated, it is conclusive as to the rights of the parties. Marion Mfg. Co. v. Long, 588 F.2d 538, 541 (6th Cir.1978); Nix v. Spector Freight System, Inc., 264 F.2d 875, 877 (3d Cir.1959); Alessandrini v. American Federation of Musicians, 334 F.Supp. 1152, 1153-54 (S.D.N.Y.1970); American Ins. Co. v. Aetna Cas. & Sur. Co., 43 N.Y.2d 184, 189-90, 401 N.Y.S.2d 36, 371 N.E.2d 798 (1977). Without deciding in what circumstances, if any, a subsequent Board decision could have res judicata effect contrary to that arising from a prior arbitration award, we reject the res judicata argument in this case for the basic reason that the Board's decision on the section 9(c) petition resolved a cause of action different from the claim adjudicated by the arbitrator. If the district judge meant to rely on collateral estoppel, that doctrine too is inapplicable because the Board's ruling did not imply necessarily a decision on the issue of contract termination.
 
 
 11
 Although the NLRB may refuse to defer to an arbitration award that is repugnant to the purposes and policies of the National Labor Relations Act, see NLRB v. New York University Medical Center, 702 F.2d 284, 288-89 (2d Cir.), vacated on other grounds, --- U.S. ----, 104 S.Ct. 53, 78 L.Ed.2d 73 (1983), there is nothing to indicate that the Board rejected the award in the instant case as being either repugnant to the purposes of the Act or in conflict with the Board's contract bar holding. The regional director's holding, which is quoted above, was not based upon the absence of a "binding contract" but upon a lack of "sufficient stability to the bargaining relationship". The NLRB's contract bar rule is intended to stabilize for a reasonable term an existing contractual relationship between an employer and its employees' bargaining representative. C.G. Willis Inc., 119 N.L.R.B. 1677, 1678 (1958). In order to bar a representation election, the contract must encompass by its terms the employees sought to be represented. Appalachian Shale Products Co., 121 N.L.R.B. 1160, 1164 (1958). In view of the substantial changes in Merrick's operations, which included an almost complete turnover in its employees, the regional director was justified in finding a lack of stability despite the asserted automatic renewal of the APDA union contract. See Sheets & Mackey, 92 N.L.R.B. 179 (1950); General Extrusion Co., 121 N.L.R.B. 1165 (1958). Moreover, since the arbitrator's award covered a period from January 1981 through June 1982, there was no inherent conflict between payments to the union for that period and the holding of a representation election three months later.
 
 
 12
 Finally, although as a general rule the question whether parties have agreed to arbitrate a given dispute is for the court, Diamond Glass Corp. v. Glass Warehouse Workers & Paint Handlers Local Union 206, 682 F.2d 301, 303 (2d Cir.1982) (per curiam), we cannot say, on the record before us, that the arbitrator exceeded his powers in deciding that Merrick had not terminated its relationship with the union so as to relieve Merrick of the contractual obligation to arbitrate. See Ottley v. Sheepshead Nursing Home, 688 F.2d 883, 885-87, 891 (2d Cir.1982). The APDA contracts provided that all disputes involving their interpretation and application should be settled by arbitration. Because of disparities in the parties' factual representations, the issue of contract termination and arbitrability simply does not lend itself to summary disposition. At the time Merrick became a member of APDA, he authorized APDA to enter into a contract on its behalf with Local 239. Both APDA and the union contend that APDA had Merrick's authorization to bind it to the several contract renewals which followed. Merrick denies this. This conflict cannot be resolved on motion papers. We find no merit in Merrick's argument that the district court's "finding of fact" that Merrick was not a party to the 1980 agreement must be upheld as not clearly erroneous. Findings of fact made in a summary judgment order are not accorded a clearly erroneous standard of review. Williams v. Eaton, 443 F.2d 422, 432-33 (10th Cir.1971). Upon remand, the initial task of the district court will be to determine whether Merrick's claim of contract termination involves construction of a collective bargaining agreement. If so, the issue would normally be for the arbitrator under the broad arbitration clause, see Rochdale Village, Inc. v. Public Service Employees Union, Local No. 80, 605 F.2d 1290, 1296-97 (2d Cir.1979), and confirmation would be warranted unless Merrick can demonstrate that the arbitrator exceeded his authority. On the other hand, if the termination dispute does not turn on construction of a collective bargaining agreement, then the district court, as fact-finder, must decide the termination issue, see Rochdale, supra, 605 F.2d at 1296-97, in order to determine whether Merrick was bound to arbitrate the merits of the Welfare Fund dispute.
 
 
 13
 For the foregoing reasons, we conclude that Merrick's motion for summary judgment should not have been granted. The factual disputes above discussed also preclude summary judgment in favor of the union. We agree with the district court that Merrick has timely interposed its jurisdictional objection to the union's petition to confirm. We need not decide whether the time limits for motions to vacate arbitration awards that are contained in 9 U.S.C. Sec. 12 or in section 7511(a) of New York Civil Practice Law and Rules (McKinney 1980) govern the assertion of defenses to a motion to confirm an award in a collective bargaining dispute, compare The Hartbridge, 57 F.2d 672, 673 (2d Cir.1932) (dictum that defenses not barred), cert. denied, 288 U.S. 601, 53 S.Ct. 320, 77 L.Ed.2d 977 (1933), with Service Employees Int'l Union, Local 36 v. Office Center Services, Inc., 670 F.2d 404 (3d Cir.1982) (defenses barred); Chauffeurs, Teamsters, Warehousemen and Helpers, Local 135 v. Jefferson Trucking Co., 628 F.2d 1023 (7th Cir.1980) (same), cert. denied, 449 U.S. 1125, 101 S.Ct. 942, 67 L.Ed.2d 111 (1981). Merrick timely interposed its objection to the arbitrator's jurisdiction by including it in its answer to the union's petition to confirm. That answer was filed within 90 days of the award.
 
 
 14
 Those portions of the district court's judgment which vacated the arbitrator's award and dismissed the petition to confirm are vacated. That portion which denied the union's application for summary judgment is affirmed. The matter is remanded to the district court for further proceedings consistent with this opinion.
 
 
 
 [1]
 Although the right of the arbitrator to proceed in the face of Merrick's jurisdictional challenge and without Merrick's participation is not completely free from doubt, see Bullard v. Morgan H. Grace Co., 240 N.Y. 388, 397, 148 N.E. 559 (1925), Merrick has not urged this as a ground for affirmance. In any event, the weight of authority seems to be that, where, as here, the objecting party is not required to participate in the selection of the arbitrator, the arbitrator, otherwise properly designated, may proceed in the objecting party's absence. See Standard Magnesium Corp. v. Fuchs, 251 F.2d 455, 456-58 (10th Cir.1957); Kanmak Mills, Inc. v. Society Brand Hat Co., 236 F.2d 240, 250-52 (8th Cir.1956); Kentucky River Mills v. Jackson, 206 F.2d 111, 116-120 (6th Cir.), cert. denied, 346 U.S. 887, 74 S.Ct. 144, 98 L.Ed. 392 (1953); Ganger Rolf v. Zeeland Transp., Ltd., 191 F.Supp. 359, 362-63 (S.D.N.Y.1961)